**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                 No. CR 09-3606 JB

FEDERICO VERA-GARCIA,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Objection to the Presentence Report, Sentencing Memorandum and Motion for Sentence Varying From the Guideline Range, filed December 28, 2010 (Doc. 42)("Objections and Sentencing Memorandum"). The Court held a sentencing hearing on January 21, 2011. The primary issues are: (i) whether the 16-level increase to Defendant Federico Vera-Garcia's base offense level as a result of his felony conviction for indecent liberties with a child older than 14, but less than 16, was properly calculated; (ii) whether the Court should depart downward because Vera-Garcia's criminal history is over-represented; and (iii) whether the Court should downwardly vary. The Court finds that the Kansas statute under which Vera-Garcia was convicted for indecent liberties with a child criminalizes only acts that constitute sexual abuse of a minor, and thus Vera-Garcia was convicted of a crime of violence and the 16-level increase was properly calculated. The Court will not grant a downward departure on Vera-Garcia's criminal history, because it does not believe his criminal history is over-represented. After careful consideration of the factors set forth in 18 U.S.C. § 3553(a), the Court will not downwardly vary.

## PROCEDURAL BACKGROUND

On December 16, 2009, the Grand Jury charged Vera-Garcia with a violation of 8 U.S.C.

§ 1326(a) and (b) -- reentry of a removed alien.  See Indictment, filed December 16, 2009 (Doc. 10).

On March 26, 2010, Vera-Garcia pled guilty, without benefit of a plea agreement, to the Indictment.

See Plea Minute Sheet, filed March 26, 2010 (Doc. 25).  On May 21, 2010, the United States

Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR").  The PSR

calculates Vera-Garcia's base offense level at 8, pursuant to U.S.S.G. § 2L1.2(a).  See PSR ¶ 11,

at 3.  The PSR then calculates a 16-level increase, pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), finding

that Vera-Garcia's prior felony conviction for indecent liberties with a child older than 14 but less

than 16 is a crime of violence, because the Kansas statute that Vera-Garcia violated meets the

definition of sexual abuse of a minor.  See PSR ¶ 12, at 3-4.  The PSR calculates a 3-level reduction

for acceptance of responsibility, yielding a total offense level of 21.  See PSR ¶ 18, at 4.  The PSR

calculates Vera-Garcia's criminal history category as III, adding one point for a conviction for

driving while impaired and three points for his conviction for indecent liberties with a child older

than 14 but less than 16.  See PSR ¶¶ 20-22, at 5-6.

On December 28, 2010, Vera-Garcia filed his Objections and Sentencing Memorandum.

Vera-Garcia objected to the calculation in paragraph 12 of the PSR, that Vera-Garcia should receive

a 16-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii).  See Objections and Sentencing

Memorandum at 2.  Vera-Garcia asks the Court to find that his indecent liberties conviction does

not constitute a crime of violence and therefore the 16-level enhancement does not apply.  See

Objections and Sentencing Memorandum at 2.  Vera-Garcia additionally asks the Court to

downwardly vary from the guideline range.  See Objections and Sentencing Memorandum at 7.

Vera-Garcia also argues that his criminal history is over-represented and asks for a downward

departure for over-representation.  See Objections and Sentencing Memorandum at 12.

Plaintiff United States of America filed its Response to Defendant's Objection to Presentence Report and Sentencing Memorandum (Doc. 42) on January 13, 2011.  See Doc. 48 ("Response"). The United States contends that the Kansas crime of indecent liberties is categorically a crime of violence, and therefore the USPO correctly applied the 16-level enhancement.  See Response at 2. The United States argues that the Kansas crime of indecent liberties can be classified as both sexual abuse of a minor and a forcible sex offense.  See Response at 4.  The United States contends that Vera-Garcia's criminal history is not over-represented.  See Response at 10.  The United States also argues that a sentence in the advisory guideline range constitutes a reasonable sentence. See Response at 14.

On January 12, 2011, the USPO disclosed a Second Addendum to the Presentence Report ("Addendum"), addressing Vera-Garcia's objection to paragraph 12 in the PSR, which enhances his base offense level by 16 levels.  The Addendum asserts that, under the application note to U.S.S.G. § 2L1.2, a forcible sexual offense includes a situation where consent to the conduct is not given or is not legally valid, and that, because the age of consent in Kansas is sixteen, and the statute covers children less than sixteen, the conviction of indecent liberties is a forcible sex offense See Addendum at 1.  The Addendum also asserts that the conviction constitutes sexual abuse of a minor, relying on the charging document, because, as the charging document shows, a minor was fondled or touched for sexual gratification.  See Addendum at 2.

## RELEVANT LAW REGARDING 16-LEVEL ENHANCEMENT FOR A CRIME OF VIOLENCE

A 16-level enhancement applies where an illegal re-entry defendant was previously convicted for a felony crime of violence.  Section 2L1.2(b)(1)(A)(ii) of the United States Sentencing

Guidelines provides for a 16-level increase in the offense level "[i]f the defendant previously was

deported . . . after (A) a conviction for a felony that is . . . (ii) a crime of violence." U.S.S.G.

§ 2L1.2(b)(1)(A)(ii).  The commentary to U.S.S.G. § 2L1.2 states:

> "Crime of violence" means any of the following offenses under federal, state, or
> local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex
> offenses (including where consent to the conduct is not given or is not legally valid
> such as where consent to the conduct is involuntary, incompetent, or coerced),
> statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate
> extension of credit, burglary of a dwelling, or any other offense under federal, state,
> or local law that has as an element the use, attempted use, or threatened use of
> physical force against the person of another.

U.S.S.G. § 2L1.2 App. Note 1(B)(iii).

The Supreme Court of the United States has addressed how courts should determine whether

a felony conviction is a crime of violence.  In Taylor v. United States, 495 U.S. 575 (1990), the

Supreme Court addressed "the meaning of the word 'burglary' as it is used in § 1402 of Subtitle I

(the Career Criminals Amendment Act of 1986) of the Anti-Drug Abuse Act of 1986, 18 U.S.C.

§ 924(e)."  495 U.S. at 577.  The Supreme Court stated that, when an enhancement provision does

not specifically define the enumerated offense, courts should define the offense according to its

"generic, contemporary meaning."  495 U.S. at 598 (using Professors LaFave's and Scott's treatises

to ascertain the general and contemporary meaning of the offense before it, and referring to the

Model Penal Code).  The Supreme Court concluded that "a person has been convicted [of the

enumerated crime] if he is convicted of any crime, regardless of its exact definition or label, having

the basic elements" of the generic, contemporary meaning of the enumerated offense.  495 U.S. at

598.  The Supreme Court then addressed "the problem of applying this conclusion to cases in which

the state statute under which a defendant is convicted varies from the generic definition of

'burglary,'" because the state statute defines burglary more broadly than the generic definition.  495

U.S. at 598.  The Supreme Court stated that, in these cases, courts should use the categorical approach, "generally requir[ing] the trial court to look only to the fact of conviction and the statutory definition of the prior offense."  495 U.S. at 601-02.  Under Taylor v. United States, it therefore appears that, when addressing an enumerated offense, a court should define the offense according to its generic, contemporary meaning and that, if a court cannot ascertain the generic contemporary meaning of the offense, the Court should follow the categorical approach in determining whether the offense is a crime of violence.  See 495 U.S. at 598-602.

The United States Court of Appeals for the Fifth Circuit has stated: "In determining whether an offense has as an element the use, attempted use, or threatened use of physical force against the person of another, [the] court uses the categorical approach set forth in Taylor v. United States." United States v. Mendoza-Sanchez, 456 F.3d 479, 482 (5th Cir. 2006).  The Fifth Circuit, however, uses a "common sense approach," defining the offense according to its ordinary, contemporary and common meaning to determine whether an offense qualifies as one of the enumerated offense in § 2L1.2.  United States v. Mendoza-Sanchez, 456 F.3d at 482.  See United States v. Mungia-Portillo, 484 F.3d 813, 816 (5th Cir. 2007).  In United States v. Hernandez-Galvan, No. 09-40872, 2011 WL 285222 (5th Cir. Jan. 31, 2011), the Fifth Circuit stated:

> To determine whether an offense falls within an enumerated category, this court employs a "common sense approach," based on the "generic, contemporary meaning" of the terms used in the Guidelines.  As a guide to contemporary meaning, the court consults such sources as "the Model Penal Code, Professors LaFave's and Scott's treatises, modern state codes, and dictionaries." . . . To determine whether an offense falls within the physical-force provision, the court employs a more "formalistic element-by-element approach."  This analysis focuses on the "elements of the offense, rather than the facts underlying the conviction."

2011 WL 285222, at *2 (internal citations omitted).

The United States Court of Appeals for the Ninth Circuit has discussed the Fifth Circuit's

use of the "common sense approach" to determine whether a prior offense constitutes a crime of violence under U.S.S.G. § 2L1.2 when the prior offense is an enumerated offense in the application notes.  United States v. Esparza-Herrera, 557 F.3d 1019, 1023 (9th Cir. 2009).

> Were we to follow this approach, we would determine whether A.R.S. § 13-1204(A)(11) "is equivalent to the enumerated offense of aggravated assault as that term is understood in its ordinary, contemporary, and common meaning."
>
> We do not use the common sense approach.  Instead, we must apply the categorical approach "even when the object offense is enumerated as a per se crime of violence under the Guidelines."  In applying the categorical approach to a "traditional crime" such as aggravated assault, "we derive [the crime's] uniform meaning from the generic, contemporary meaning employed by most states, guided by scholarly commentary."  The Model Penal Code "serve[s] as an aid" in determining an offense's generic meaning.  We derive the meaning of an enumerated Guidelines crime not from the offense's ordinary meaning but rather by surveying the Model Penal Code and state statutes to determine how they define the offense.  Thus even if A.R.S. § 13-1204(A)(11) is equivalent to aggravated assault "as we generally understand that term," we must conclude that Esparza-Herrera's prior conviction was not for generic aggravated assault if together the Model Penal Code and most states define aggravated assault more narrowly than does the Arizona statute.

557 F.3d at 1023 (internal citations omitted).  The United States Court of Appeals for the Eleventh Circuit has made a similar statement in United States v. Palomino Garcia, 606 F.3d 1317 (11th Cir. 2010).

> Taylor instructs us to determine whether the Arizona aggravated assault statute under which [the defendant] was convicted is equivalent to the generic crime of "aggravated assault" so as to qualify as a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii).  To accomplish this task, we must derive the elements of a generic offense of aggravated assault by considering the elements of the crime that are common to most states' definitions of that crime, as well as learned treatises, and the Model Penal Code.

606 F.3d at 1331.

The United States Court of Appeals for the Tenth Circuit, in addressing whether a defendant's conviction for robbery constituted a crime of violence, stated:

> To determine whether a particular state's criminal statute falls within the ambit of the term "crime of violence" under the Guidelines, we look not to how a state has

labeled its statute, but rather consider whether the statute corresponds with the "uniform generic definition" of the crime, using the analytical framework set out in Taylor v. United States, 495 U.S. 575 . . . (1990).  To do so, we examine whether the state's statute "roughly correspond[s] to the definitions of [the crime] in a majority of the States' criminal codes," id. at 589, 110 S. Ct. 2143, as well as prominent secondary sources, such as criminal law treatises and the Model Penal Code.  See, e.g., United States v. Santiesteban-Hernandez, 469 F.3d 376, 379 (5th Cir. 2006).

United States v. Garcia-Caraveo, 586 F.3d 1230, 123 (10th Cir. 2009)(internal footnote omitted).

In both United States v. De La Cruz-Garcia, 590 F.3d 1082 (10th Cir. 2010) and United States v. Romero-Hernandez, 505 F.2d 1082 (10th Cir. 2007), the Tenth Circuit addressed the enumerated crimes of "forcible sex offense" and "sexual abuse of a minor," and after discussing the categorical approach, it stated that, because the guidelines do not define the terms "forcible sex offense" and "sexual abuse of a minor," it looks to the ordinary, contemporary, and common meanings of the words used.  See United States v. De La Cruz-Garcia, 590 F.3d at 1160; United States v. Romero-Hernandez, 505 F.3d at 1087.

It appears that, to determine whether Kansas' criminal statute falls within the ambit of a crime of violence, the Court should consider whether the statute corresponds with the uniform, generic definition of "sexual abuse of a minor."  To ascertain the uniform, generic definition of "sexual abuse of a minor," the Court will examine other state's statutes, criminal law treatises, the Model Penal Code, and dictionaries.  If the Court cannot ascertain a uniform, generic definition based upon these sources, the Court will use the categorical approach to determine whether Vera-Garcia was convicted of a crime of violence.

Under the categorical approach, the court may look only to the statutory definition of the prior offenses and not to the particular facts of the defendant's underlying conduct.  See United States v. Perez-Vargas, 414 F.3d 1282, 1284 (10th Cir. 2005).  In a "narrow range" of cases, the categorical approach permits the court to look beyond the statute of conviction and to apply a

"modified categorical approach." United States v. Torres-Romero, 537 F.3d 1155, 1158 (10th Cir. 2008). When the underlying statute "reaches a broad range of conduct, some of which merits an enhancement and some of which does not, courts resolve the resulting ambiguity by consulting reliable judicial records, such as the charging document, plea agreement, or plea colloquy." United States v. Torres-Romero, 537 F.3d at 1158 (quoting United States v. Martinez-Hernandez, 422 F.3d 1084, 1086 (10th Cir. 2005)). Under the modified categorical approach, the court "may examine judicial records in order to determine which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face." United States v. Torres-Romero, 537 F.3d at 1158 (quoting United States v. Zuniga-Soto, 527 F.3d 1110, 1121 (10th Cir. 2008)). The Tenth Circuit has said that "the modified approach is properly used when the statute of conviction contains multiple element sets and is therefore divisible." United States v. Herrera, 286 F. App'x 546, 552 (10th Cir. 2008)(unpublished opinion)(citing United States v. Hays, 526 F.3d 674, 676 (10th Cir. 2008)).

In United States v. Herrera, the Tenth Circuit stated that, in analyzing the elements of a statute, the court may give deference to the state court's interpretation of the underlying statute of conviction. See 286 F. App'x at 551, 557 ("[O]ur precedent indicates that it is proper for this court to look to the state court's analysis of its own law in interpreting the underlying state law conviction which serves as the basis for the sixteen level 'crime of violence' enhancement.").

## THE SIXTH AMENDMENT RIGHT TO COUNSEL

In Gideon v. Wainwright, 372 U.S. 335 (1963), the Supreme Court held that the Sixth Amendment's guarantee of the right to appointed counsel applies to state criminal prosecutions by incorporation through the Fourteenth Amendment. See 372 U.S. at 344-45. Clarifying the scope of the right to counsel, the Supreme Court later held that an indigent defendant must be appointed

counsel in any criminal prosecution "that actually leads to imprisonment even for a brief period," regardless of its classification as a misdemeanor or a felony.  Argersinger v. Hamlin, 407 U.S. 25, 33 (1972).   Seven years later, in Scott v. Illinois, 440 U.S. 367 (1979), the Supreme Court established the outer limit of the right to counsel enunciated in Argersinger v. Hamlin.  See Scott v. Illinois, 440 U.S. at 373.  The Supreme Court of Illinois had declined to extend Argersinger v. Hamlin to the defendant, where he was "charged with a statutory offense for which imprisonment upon conviction is authorized but not actually imposed upon the defendant."  Scott v. Illinois, 440 U.S. at 369.  The Supreme Court affirmed, explaining: "Even were the matter res nova, we believe that the central premise of Argersinger -- that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment -- is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel."  Scott v. Illinois, 440 U.S. at 373.  The Supreme Court held that the Sixth and Fourteenth Amendments do not entitle an indigent defendant to trial counsel where he was convicted of theft and fined $ 50.00 after a bench trial.  See 440 U.S. at 367, 368 ("We therefore hold that the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense.").

## CHALLENGES TO PRIOR CONVICTIONS AT SENTENCING

In Custis v. United States, 511 U.S. 485 (1994), the Supreme Court found that, for purposes of the penalty enhancements for prior convictions that are imposed by the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e), a defendant in a federal sentencing proceeding has no right to collaterally attack the validity of his previous state convictions, with the sole exception of convictions obtained in violation of the right to counsel.  See Custis v. United States,

511 U.S. at 487.  The Supreme Court explained: "There is thus a historical basis in our jurisprudence of collateral attacks for treating the right to have counsel appointed as unique, perhaps because of our oftstated view that 'the right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.'"  511 U.S. at 494-95 (quoting Powell v. Alabama, 287 U.S. 45 (1932)).  In Burgett v. Texas, 389 U.S. 109 (1967), the Supreme Court held that the admission of a prior criminal conviction that is constitutionally infirm under the standards of Gideon v. Wainwright is inherently prejudicial and to permit use of such a tainted prior conviction for sentence enhancement would undermine the principle of Gideon v. Wainwright.  See Burgett v. Texas, 389 U.S. at 115 ("Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.").

In United States v. Garcia, 42 F.3d 573 (10th Cir. 1994), the Tenth Circuit, relying on the Supreme Court's holding in Custis v. United States, held that, in a sentencing proceeding under the Guidelines, a defendant may not collaterally attack a prior conviction except on the ground of a complete denial of counsel.  See 42 F.3d at 581.  The Tenth Circuit has since consistently held that, with the exception of a collateral attack based on complete denial of counsel, a district court cannot consider a collateral attack on a prior conviction when sentencing a defendant.  In United States v. Cousins, 455 F.3d 1116 (10th Cir.), cert. denied, 549 U.S. 866 (2006), the Tenth Circuit stated

> an exception to this general rule [barring collateral attacks of prior convictions] at sentencing is that challenges to the constitutionality of a conviction based upon a violation of the right to counsel are permitted in sentencing proceedings, even though the defendant is attacking the prior state conviction collaterally in federal court.

455 F.3d at 1125.  See United States v. Delacruz-Soto, 414 F.3d 1158, 1167 (10th Cir. 2005)(holding that, "with the exception of a collateral attack based on the complete denial of counsel, a district court sentencing a defendant under 8 U.S.C. § 1326(b)(2) and U.S.S.G. §

2L1.2(b)(1)(A) cannot consider a collateral attack on a prior conviction."); United States v. Cruz-Alcala, 338 F.3d at 1197 (stating the holding of United States v. Garcia).

### 1.      Waiver of the Right to Counsel.

It is well established that a defendant has a constitutional right to waive his right to counsel. See United States v. Molina-Barajas, 47 F. App'x 552, 555 (10th Cir. 2002)(citing United States v. Windle, 74 F.3d 997, 1001 (10th Cir.1996)).  If a defendant validly waives his right to counsel, the waiver precludes the defendant from collaterally attacking the conviction.  See United States v. Molina-Barajas, 47 F. App'x at 555 ("Further, if defendant entered into a valid waiver [of his right to counsel], the waiver precludes him from collaterally attacking the California conviction.")(citing United States v. Windle, 74 F.3d at 1001).

The Tenth Circuit has consistently held that

> [a] defendant's waiver of his right to counsel is valid only if it is knowing and intelligent; the waiver is knowing and intelligent only if the trial court informs the defendant on the record of the nature of the charges against him, the possible punishments and defenses, and the dangers and disadvantages of self-representation.

Munkus v. Furlong, 170 F.3d 980, 983 (10th Cir. 1999)(citations omitted).  See United States v. Willie, 941 F.2d 1384, 1388 (10th. Cir. 1991)("[T]o be valid, the trial judge must ensure that the waiver . . . is an intentional relinquishment . . . of a known right . . . .  Ideally, . . . the record [should] demonstrate that the defendant [knows] the nature of the charges, the range of allowable punishments and possible defenses, and . . . the risks of proceeding pro se."  (internal quotation marks and citations omitted)); United States v. Silkwood, 893 F.2d 245, 248 (10th Cir. 1989)(stating that for a waiver of counsel to be knowing and intelligent, the court must conduct a "comprehensive examination into the defendant's apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the

charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." (internal quotation marks and citations omitted)).

2.    **Presumption of Regularity.**

The Supreme Court has held that there is a "'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." Parke v. Raley, 506 U.S. 20, 29 (1992)(quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). In Parke v. Raley, the defendant, who was charged as a persistent felony offender, argued that two of the convictions offered against him were invalid under Boykin v. Alabama, 395 U.S. 238 (1969), because the records for the convictions did not contain transcripts of the plea proceedings and therefore did not affirmatively show that his guilty pleas were knowing and voluntary. See 506 U.S. at 23. The Supreme Court stated:

> On collateral review, we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights. In this situation, Boykin does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained.

506 U.S. at 30. The Supreme Court thus found that, "even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant." Parke v. Raley, 506 U.S. at 31 (citation omitted).

3.    **Overcoming the Presumption of Regularity.**

The Tenth Circuit in United States v. Duarte-Gutierrez, 129 F. App'x 440 (10th Cir. 2005) stated:

> Once the existence of a conviction is established, the presumption of regularity attaches and we assume that the convicting court complied with the law in all

respects, including the requirements for establishing a waiver of the right to counsel. The government is not required to offer any evidence of compliance; Defendant must prove noncompliance.

129 F. App'x at 443.  "To overcome this presumption and bar the use of a prior conviction for sentence enhancement, the defendant must prove by a preponderance of the evidence that the conviction was constitutionally infirm."  United States v. Krejcarek, 453 F.3d 1290, 1297 (10th Cir. 2006)(citing United States v. Windle, 74 F.3d 997, 1001 (10th Cir. 1996)).  See United States v. Cruz-Alcala, 338 F.3d 1194, 1197 (10th Cir. 2003)("Once the prosecution establishes the existence of a conviction, the defendant must prove by a preponderance of the evidence that the conviction was constitutionally infirm."  (emphasis in the original)(internal quotation marks omitted)).

"[A] defendant may not simply point to a silent or ambiguous record, but must come forward with affirmative evidence establishing that the prior convictions were obtained in violation of the Constitution."  United States v. Cruz-Alcala, 338 F.3d at 1197.  "Self-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded prior convictions."  United States v. Krejcarek, 453 F.3d at 1297 (quoting Cuppett v. Duckworth, 8 F.3d 1132, 1139 (7th Cir. 1993)(en banc).  See United States v. Wicks, 995 F.2d at 978 ("Self-serving conclusory statements would be unavailing, of course.").  In addition, "[t]he fact one jurisdiction may utilize a different docketing or record keeping system than another does not prove by a preponderance of the evidence [that the defendant] did not waive his right to counsel."  United States v. Sanchez, 230 F. App'x 803, 807-08 (10th Cir. 2007).

## ANALYSIS

The Court finds that the 16-level increase was properly calculated, because the Kansas statute under which Vera-Garcia was convicted criminalizes only acts that constitute sexual abuse of a minor.  The Court therefore finds that Vera-Garcia was convicted of a crime of violence.  The

Court will not grant a downward departure on Vera-Garcia's criminal history, because it does not believe his criminal history is over-represented. After careful consideration of the factors set forth in 18 U.S.C. § 3553(a), the Court will not downwardly vary.

**I.      VERA-GARCIA'S CONVICTION FOR INDECENT LIBERTIES IS A CRIME OF VIOLENCE.**

Vera-Garcia contends that his indecent liberties conviction is not an enumerated offense under U.S.S.G. § 2L1.2 either as a forcible sexual offense or sexual abuse of a minor. Vera-Garcia contends, therefore, that for the Court to determine that the indecent liberties conviction comprises a crime of violence, it must find that the indecent liberties statute has as an element the use, attempted use, or threatened use of physical force against the person of another. Vera-Garcia argues that construction of the Kansas statute yields to the conclusion that indecent liberties is an act that can be committed without the active use of force.

In response, the United States contends that the Kansas crime of indecent liberties is an enumerated crime of violence, because it can be classified both as sexual abuse of a minor and as a forcible sex offense. The United States contends that, because the Kansas crime of indecent liberties can be classified as an enumerated crime of violence, the Court need not address whether it has as an element the use, attempted use, or threatened use of physical force against another's person.

The Kansas statute states:

(a) Indecent liberties with a child is engaging in any of the following acts with a child who is 14 or more years of age but less than 16 years of age:

      (1) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both; or

      (2) soliciting the child to engage in any lewd fondling or touching of the

-14-

person of another with the intent to arouse or satisfy the sexual desires of the child, the offender or another.

(b) It shall be a defense to a prosecution of indecent liberties with a child as described in subsection (a)(1) that the child was married to the accused at the time of the offense.

(c) Indecent liberties with a child is a severity level 5, person felony.

Kan. Stat. Ann. § 21-3503.

To determine whether Kansas' criminal statute falls within the ambit of a crime of violence, the Court should consider whether the statute corresponds with the uniform, generic definition of "sexual abuse of a minor." To ascertain the uniform, generic definition of "sexual abuse of a minor," the Court will examine other state's statutes, criminal law treatises, the Model Penal Code, and dictionaries. If the Court cannot ascertain a uniform, generic definition based upon these sources, the Court will use the categorical approach to determine whether Vera-Garcia was convicted of a crime of violence.

The Model Penal Code defines several offenses, including rape, gross sexual imposition, deviate sexual intercourse by force or imposition, sexual assault, and corruption of minors and seduction. Regarding the offense of corruption of minors and seduction, it states:

(1) **Offense Defined.** A male who has sexual intercourse with a female not his wife, or any person who engages in deviate sexual intercourse [ -- meaning sexual intercourse per os or per anum between human beings who are not husband and wife -- ] or causes another to engage in deviate sexual intercourse, is guilty of an offense if:

(a) the other person is less than [16] years old and the actor is at least [four] years older than the other person; or

(b) the other person is less than 21 years old and the actor is his guardian or otherwise responsible for general supervision of his welfare; or

(c) the other person is in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over him;

-15-

or

>(d) the other person is a female who is induced to participate by a promise of marriage which the actor does not mean to perform.

Model Penal Code § 213.3.  Because the Model Penal Code does not address an offense sufficiently analogous to "sexual abuse of a minor," the Court will look to other sources to determine whether it can ascertain a generic, uniform definition of the offense.

Criminal law treatises address offenses such as rape and statutory rape.  See, e.g., W. LaFave, Criminal Law 891-922 (5th ed. 2010); A. Loewy, Criminal Law 59-62 (1975).  The Court has not, however, found a discussion of an offense analogous to the offense of sexual abuse of a minor in criminal law treaties.  The Court will therefore continue to look to other sources to determine whether it can ascertain a generic, uniform definition of the offense of "sexual abuse of a minor."

Many states have enacted statutes criminalizing "sexual abuse of a minor."  These state statutes apply to minors at various ages.  See Ala. Code § 13A-6-67 (applying to victims between the ages of twelve and sixteen); Colo. Rev. Stat. § 18-3-405 (applying to victims less than fifteen years of age); Idaho Code Ann. § 18-1506 (applying to a victim under sixteen years); Me. Rev. Stat. § 254 (applying to a minor between ages of fourteen to fifteen years of age); Or. Rev. Stat. § 163.415 (applying to a victim "incapable of consent by reason of being under 18 years of age"); Wash. Rev. Code § 9A.44.089 (applying to victims fourteen to sixteen years); Utah Code Ann. § 76-5-401.1 (applying to victims between the ages of 14 to 16).  Although the Court recognizes that all the statutes apply to victims under eighteen years of age, the statutes apply to various ages under eighteen.  The Court therefore believes that the statutes do not set forth a uniform definition of a minor.

Several of the state statutes require an act, done to gratify or arouse sexual desire.  See Idaho Code Ann. § 16-1506 (applying to perpetrators, who, "with intent to gratify the lust, passions, or sexual desire of the actor, minor child or third part," cause or "have sexual contact with such minor child," and defining "sexual contact" as "human masturbation, sexual intercourse, sadomasochistic abuse, or any touching of the genitals or pubic areas of the human male or female . . . in an act of apparent sexual stimulation or gratification"); Neb. Rev. Stat. §§ 28-318, 28-320.01 (criminalizing "the intentional touching of the victim's sexual or intimate parts" or touching of the victim's clothing covering the "immediate area of the victim's sexual or intimate parts," or the touching "by the victim of the actor's sexual or intimate parts or the clothing covering" the actor's sexual or intimate parts "when such touching is intentionally caused by the actor," when the "conduct . . . can be reasonably construed as . . . for the purpose of sexual arousal or gratification of either party"); Utah Code Ann. § 46-5-401.1 (applying to perpetrators who "touch[ ] the anus, buttocks, or any part of the genitals of the minor, . . . or otherwise takes indecent liberties with the minor, or causes a minor to take indecent liberties with the actor or another person, with the intent to . . . arouse or gratify the sexual desire of any person"); W. Va. Code § 61-8-B-9 (criminalizing a victim's subjection to sexual contact without consent, when lack of consent is due to the victim's incapacity to consent because the victim is less than sixteen, and defining sexual contact as "intentional touching . . . of the breasts, buttocks, anus, or any part of the sex organs of another person, or intentional touching of any part of another person's body by the actor's sex organs, where . . . the touching is done for the purpose of gratifying the sexual desire of either party"); Wyo. Stat. Ann. §§ 6-2-301, 6-2-316 (criminalizing sexual contact -- defined as "touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate parts by the actor, or of the actors' intimate parts by the victim, or of the clothing covering the immediate area of the victim's or actor's

intimate parts" -- with a victim between ages of thirteen and fifteen when the perpetrator is seventeen years of age or older).[1]  Some state statutes, however, require touching, done for either purposes of sexual gratification or arousal, or degrading or humiliating the victim.  See Conn. Gen. Stat. §§ 53a-65, 53a-73a (criminalizing sexual contact with a person under thirteen years of age if the actor is more than two years older than the victim, or with a person between ages of thirteen and fifteen if the actor is more than three years older than the victim, and defining sexual contact as any contact with the "intimate parts of a person . . . for . . . sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor . . . for . . . sexual gratification of the actor or for the purpose of degrading or humiliating such person"); N.J. Stat. Ann. §§ 2C:14-1, 2C:14-2 (stating that an "actor is guilty of sexual assault if he commits an act of sexual contact" with a victim less than thirteen years old, if the actor is at least four years older than the victim, and defining sexual contact as "intentional touching by the victim or actor . . . of the victim's or actor's intimate parts for the purpose of degrading or humiliating the

---

[1] Other state statutes that require touching of the minor victim for purposes of sexual gratification or arousal include Maryland's statute, which criminalizes a person from engaging in sexual contact -- defined as "intentional touching of the victim's or actor's genital, anal or other intimate area for sexual arousal or gratification" -- with a victim under fourteen years, if the person is at least four years older than the victim, see Md. Code Ann. Crim. Law §§ 3-301, 3-307, and Delaware's statute, which criminalizes sexual contact -- defined as intentional touching of the "anus, breast, buttocks or genitalia" by the defendant of the victim or victim of the defendant "which . . . , under the circumstances as viewed by a reasonable person, is intended to be sexual in nature" -- with a person less than eighteen, see Del. Code Ann tit. 11, §§ 761, 768.  See also Mo. Rev. Stat. §§ 566.010, 566.068 (criminalizing sexual contact with a person under seventeen years of age and defining sexual contact as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through clothing, for the purpose of arousing or gratifying sexual desire of any person"); W. Va. Code § 61-8B-9 (criminalizing sexual contact with a victim's consent, when "such lack of consent is due to the victim's incapacity to consent by reason of being less than sixteen" and defining sexual contact as "intentional touching . . . of the breasts, buttocks, anus or any part of the sex organs of another person, or intentional touching of any part of another person's body by the actor's sex organs, where . . . the touching is done for the purpose of gratifying the sexual desire of either party").

victim or sexually arousing or sexually gratifying the actor"); Wis. Stat. §§ 948.01, 948.02 (criminalizing sexual contact with persons under age sixteen and defining sexual contact as "intentional touching . . . if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant"). Cf. R.I. Pub. Laws §§ 11-37-1, 77-37-8.3 (criminalizing sexual contact with a person fourteen years of age or under and defining sexual contact as "the intentional touching of the victim's or accused's intimate parts, clothed or unclothed, if that intentional touching can be reasonably construed as intended by the accused to be for the purpose of sexual arousal, gratification, or assault"). Other state statutes require intentional touching of a victim's or actor's intimate parts, but the intent that the victim or actor commit the touching for purposes of sexual gratification or arousal. See Haw. Rev. Stat. §§ 707-700, 707-732 (criminalizing a person knowingly subjecting another person under fourteen to sexual contact and a person knowingly engaging in sexual contact with a person fourteen to sixteen years of age, and defining sexual contact as "any touching . . . of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person"); N.M.S.A. 1978, § 30-9-18 ("Criminal sexual contact of a minor is the unlawful and intentional touching of or applying force to the intimate parts of a minor or the unlawful and intentional causing of a minor to touch one's intimate parts. '[I]ntimate parts' means the primary genital area, groin, buttocks, anus or breast."). The Court believes that, although there are variations in the state offenses criminalizing sexual abuse of a minor, the majority of the state statutes criminalizing sexual abuse of a minor, in one form or another, require touching for sexual purposes, because most of the statutes criminalizing sexual abuse of a minor require touching for purposes of sexual arousal or gratification. Because Kansas' statute requires "lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy

the sexual desires of either the child or the offender, or both," see Kan. Stat. Ann. § 21-3503, the Court believes that it "roughly corresponds" to the requirement of touching for sexual purposes set forth "in a majority of the States' criminal codes" criminalizing sexual abuse of a minor, United States v. Garcia-Caraveo, 586 F.3d at 1233 (citation and internal alteration omitted).  Accordingly, because the Court concludes that the majority of state statutes criminalizing sexual abuse of a minor require touching for sexual purposes, and because the Kansas statute shares this element with a majority of the state statutes criminalizing sexual abuse of a minor, the Court believes that the Kansas statute roughly corresponds to the generic, uniform definition of "sexual abuse of a minor" as an enumerated offense in U.S.S.G. § 2L1.2.  Nevertheless, because there are variations among the states, and because the state statutes do not set forth a uniform definition of the term "minor," the Court will further consider other sources to confirm that the Kansas statute roughly corresponds to the generic, uniform definition of "sexual abuse of a minor."

In United States v. De La Cruz-Garcia, the Tenth Circuit defined the term "sexual abuse of a minor" according to the ordinary, contemporary and common meanings of the words as set forth in several prominent dictionaries.  The Tenth Circuit used these definitions from several dictionaries to set forth set forth generic, uniform definitions of the elements for the offense of "sexual abuse of a minor."  The Court will therefore analogize the Kansas statute to the definitions set forth in United States v. De La Cruz-Garcia to determine whether the Kansas statute corresponds to the generic, uniform definition of the offense that the Tenth Circuit set forth.

In United States v. De La Cruz-Garcia, the Tenth Circuit held that "the Colorado statute [of sexual assault on a child] criminalizes only activity that qualifies as 'sexual abuse of a minor,' and thus meets the definition of 'crime of violence.'" 590 F.3d at 1160 (citation omitted).  The Tenth Circuit looked to the ordinary, contemporary, and common meanings of the words "sexual abuse

of a minor" to determine whether the Colorado statute for sexual assault on a child met the common definition of "sexual abuse of a minor." See 590 F.3d at 1160. The Colorado statute under which the defendant was convicted stated: "Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim." United States v. De La Cruz-Garcia, 590 F.3d at 1159 (quoting Colo. Rev. Stat. § 18-3-405(1)). The Colorado statute defined the phrase "sexual contact" as

> the knowing touching of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or the knowing touching of the clothing covering the immediate area of the victim's or actor's intimate parts if that sexual contact is for the purposes of sexual arousal, gratification, or abuse.

United States v. De La Cruz-Garcia, 590 F.3d at 1159-60 (quoting Colo. Rev. Stat. § 18-3-401(4)). The Tenth Circuit found that the Colorado statute was limited to minors, sexual acts, and abusive conduct, and therefore held that the Colorado statute met the definition of a crime of violence. See United States v. De La Cruz-Garcia, 590 F.3d at 1159-60.

The Court finds that the Kansas statute applies to minors. The Tenth Circuit has defined the term "minor" as a "person who is under the age of legal competence . . . In most states, a person is no longer a minor after reaching the age of 18." United States v. De La Cruz-Garcia, 590 F3d at 1160 (citing Black's Law Dictionary 997 (6th ed. 1991); Webster's International Dictionary Unabridged 1439 (1993)). The Kansas Legislature has stated: "The period of minority extends in all persons to the age of eighteen (18) years . . . in all matters relating to contracts, property rights, liabilities and the capacity to sue and be sued." Kan. Sat. Ann. § 38-101. In United States v. De La Cruz-Garcia, the Tenth Circuit stated that, "[a]lthough there may be some ambiguity as to precisely when an individual ceases being a minor, the term certainly applies to a person fourteen years of

age, the maximum age of a victim under" the Colorado statute before the Tenth Circuit.  United States v. De La Cruz-Garcia, 590 F.3d at 1160.  Similarly, the Kansas statute involves minors as the term is commonly used, because the statute is applicable only to victims between the ages of 14 to 16 and the Kansas Legislature has stated that the period of minority extends until a child is eighteen years.  See United States v. Ramos-Sanchez, 483 F.3d 400, 403 n.3 (5th Cir. 2007)(construing a Kansas statute criminalizing indecent solicitation of a child as a crime of violence under the enumerated crime of sexual abuse of a minor, and stating that "[t]here is no question about the required minority of the victim, since the statute only applies when the object of solicitation is under 16.").

The Court also finds that the Kansas statute applies to sexual acts.  The Tenth Circuit has defined the term "[s]exual" as meaning "of or relating to the sphere of behavior associated with libidinal gratification."  United States v. De La Cruz-Garcia, 590 F.3d at 1160 (citing Webster's International Dictionary Unabridged 2082).  In United States v. De La Cruz-Garcia, the Tenth Circuit found that the Colorado statute before it was limited to sexual acts, "[b]ecause the Colorado statute requires as an element the touching of the victim or the perpetrator's 'intimate parts . . . for the purpose of sexual arousal, gratification, or abuse."  United States v. De La Cruz-Garcia, 590 F.3d at 1160 (citing Colo. Rev. Stat. § 18-3-401(4)).  The Kansas statute does not specify that the touching be of intimate parts like the Colorado statute at issue in United States v. De La Cruz-Garcia, but it requires lewd touching or fondling to satisfy sexual desires.  See Kan. Stat. Ann. § 21-3503.  Vera-Garcia argues that the term lewd touching or fondling is too broad to be limited solely to sexual acts.  Although the language of the Kansas statute is not as specific as the language of the Colorado statute, which required touching of intimate parts for sexual arousal or gratification, the Court believes that the language of the Kansas statute falls within the Tenth Circuit's definition of

"sexual."   The Tenth Circuit's has defined "sexual" as "behavior associated with libidinal gratification." United States v. De La Cruz-Garcia, 590 F.3d at 1160 (citations omitted).  The Kansas statute requires lewd touching or fondling, which constitutes behavior, and the requirement that the touching or fondling be lewd and with intent to arouse or satisfy sexual desires constitutes association of that behavior of touching or fondling with libidinal gratification.  See United States v. Garcia-Juarez, 421 F.3d 655, 659 (8th Cir. 2005)(stating that the word "sexual" indicates "that the perpetrator's intent in committing the abuse is to seek libidinal gratification," and holding that "achieving sexual gratification by unlawfully touching a child" a prohibited in an Iowa statute "constitutes sexual abuse of a minor").

Furthermore, Kansas courts' interpretation of the statute support the Court's finding that the Kansas statute is limited to sexual acts.  See United States v. Herrera, 286 F. App'x 546, 557 (10th Cir. 2008)("[W]e give deference to the state court's interpretation of its own law.").  An older version of the Kansas statute did not include the word lewd, and the Supreme Court of Kansas found that this version of the statute was  unconstitutionally vague because of the indefiniteness as to the contact and the part of the body involved.  See State v. Wells, 573 P.2d 580, 583 (Kan. 1977).  The Kansas Legislature then amended the statute by adding the word lewd to modify fondling and touching.  See State v. Wells, 573 P.2d at 583.  Although the Kansas Legislature did not substitute the word "sex organs" in place of "person" to make lewd fondling or touching of sex organs a necessary element, the Supreme Court of Kansas has construed the language "lewd fondling and touching," as requiring

> the state to prove a fondling or touching in a manner which tends to undermine the morals of the child, which is so clearly offensive as to outrage the moral senses of a reasonable person, and which is done with the specific intent to arouse or to satisfy the sexual desires of either the child or the offender or both.

-23-

State v. Wells, 573 P.2d at 583.  The Supreme Court of Kansas has recognized that the word "lewd" implies an activity exhibiting depraved or lascivious intent, and that it is commonly defined as "sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; indecent, obscene, salacious."  State v. Wells, 573 P.2d at 583.  Moreover, the Kansas statute is contained in Article 35 of the statute, entitled "Sex Offenses."  The Court therefore finds that the Kansas statute is limited to sexual acts.

The Court also finds that the Kansas statute is limited to abuse.  The Tenth Circuit has defined "abuse" as to "take unfair or undue advantage of," and "to use or treat so as to injure, hurt, or damage."  United States v. De La Cruz-Garcia, 590 F.3d at 1160 (citing Wester's International Dictionary Unabridged 8); Black's Law Dictionary 10).  In United States v. De La Cruz-Garcia, the Tenth Circuit found that the Colorado statute was limited to abusive conduct, because the statute applied to "knowing touching of the victim's intimate parts . . . or the actor's intimate parts by the victim . . . for purposes of sexual arousal," and because the victim must be a minor; therefore, the contact described in the statute "[wa]s necessarily abusive."  United States v. De La Cruz-Garcia, 590 F.3d at 1160 (citation omitted).  The Tenth Circuit stated:

> When an older person subjects a minor to such contact, the minor is legally incapable of granting consent, engaging in nonconsensual sexual activity with a victim inherently involves taking unfair or undue advantage of the victim.  Further, such contact is almost certain to injure, hurt, or damage the minor psychologically, if not physically.

United States v. De La Cruz-Garcia, 590 F.3d at 1160 (internal citation omitted).  In United States v. De La Cruz-Garcia, the Tenth Circuit also addressed the defendant's argument that the Colorado statute would apply to a person touching his or her own intimate parts, or clothing covering those parts, in the presence of a minor, and that such conduct would not constitute a crime of violence.  See  United States v. De La Cruz-Garcia, 590 F.3d at 1160.  The Tenth Circuit stated that

-24-

adopting De La Cruz-Garcia's interpretation of the statute would not aid him. We agree with our sibling circuit that exposing a minor to a lascivious display also qualifies as "sexual abuse" because it "requires exposure with knowledge of the child's presence, thereby wrongly and improperly using the minor and thereby harming the minor." United States v. Zavala-Sustaita, 214 F.3d 601, 604 (5th Cir.2000). As the Fifth Circuit further noted,

> [a] distinction that treats a stranger's brief groping of a child in a public shower as qualitatively more serious than the conduct of an adult who verbally forces a child to watch him repeatedly engage in sex acts is unjustifiable. Both acts are clearly forms of "sexual abuse" as that phrase is commonly understood . . . .

> Since psychological harm can occur without physical contact, a distinction based only on physical contact would miss the essential nature of "sexual abuse."

United States v. De La Cruz-Garcia, 590 F.3d at 1160 (quoting United States v. Zavala-Sustaita, 214 F.3d at 605).

The Kansas statute criminalizes

> [a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both; or . . . soliciting the child to engage in any lewd fondling or touching of the person of another with the intent to arouse or satisfy the sexual desires of the child, the offender or another.

Kan. Stat. Ann. § 21-3503(a). It appears that the Kansas statute applies to a person either touching himself or herself, or touching the minor victim. The Court finds that the Kansas statute, as it pertains to the touching or fondling of a child for arousing or satisfying sexual desires of the child or offender, criminalizes abusive conduct, because the age of consent in Kansas is sixteen. See State v. Hutchcraft, 744 P.2d 849, 855 (Kan. 1987), overruled on other grounds by State v. Fike, 757 P.2d 724 (Kan. 1988). The victims covered by the statue are therefore legally incapable of consenting to the touching or fondling. Cf. U.S.S.G. § 2L1.2 App. Note 1(B)(iii)(expounding the enumerated offense "forcible sex offenses" by stating that the offense includes "where consent to the conduct

is not given or is not legally valid such as where consent to the conduct is involuntary, incompetent, or coerced"). Because "engaging in nonconsensual sexual activity with a victim inherently involves taking unfair or undue advantage of the victim," the Court finds that this form of touching is abusive. United States v. De La Cruz-Garcia, 590 F3d at 1160 (citation omitted). The portion of the Kansas statute criminalizing an offender touching him or herself done with the intent to satisfy or arouse his or her sexual desires or the child's sexual desires also proscribes abusive conduct, because "exposing a minor to a lascivious display . . . qualifies as 'sexual abuse' because it 'requires exposure with knowledge of the child's presence, thereby wrongly and improperly using the minor and thereby harming the minor.'" United States v. De La Cruz-Garcia, 590 F3d at 1160 (citation omitted). The Court therefore finds that the Kansas statute criminalizes only abusive conduct. Accordingly, to violate the Kansas indecent liberties statute, the state must prove: (i) the child is between ages of fourteen and sixteen years; (ii) that the defendant committed an act of lewd fondling or touching of the person of the child or the offender; and (iii) that the defendant committed the touching or fondling or submitted to the touching or fondling with the intent to arouse the sexual desires of either the child or the offender or both, see Kan. Stat. Ann § 21-3503, and only when he or she does these essential elements, does one commit the crime of indecent liberties. Hence these essential elements constitute a crime of violence, and the Kansas statute of indecent liberties criminalizes only acts that constitute sexual abuse of a minor.

The Court finds that Vera-Garcia's conviction under the statute is a crime of violence, because it has found that the Kansas statute criminalizes only acts that constitute sexual abuse of a minor. See United States v. De La Cruz-Garcia, 590 F.3d at 1160 ("[W]e hold that even under the broadest interpretation of Colo. Rev. Stat. § 18-3-405(1), the statute criminalizes only acts that constitute "sexual abuse of a minor" and thus "crime[s] of violence" for purposes of U.S.S.G.

§ 2L1.2(b)(1)(A)(ii).").  Because the Court has found that the Kansas statute criminalizes only acts that constitute sexual abuse of a minor, and therefore Vera-Garcia's conviction was for a crime of violence, the Court need not address whether the Kansas statute criminalizes acts constituting a forcible sex offense, or whether the crime of indecent liberties under the Kansas statue has as an element the use, attempted use, or threatened use of physical force against another's person.

## II.   VERA-GARCIA'S CRIMINAL HISTORY IS NOT OVER-REPRESENTED.

Vera-Garcia argues that his criminal history is over-represented.  He argues that the Court should not impose the one point he received for his conviction for driving while impaired, because he waived counsel for that conviction and he may have served some period of incarceration for the offense, and because there has not been a showing that such a waiver was made knowingly or voluntarily.  Regarding the three criminal history points he received for his indecent liberties conviction, Vera-Garcia argues that he served a term of imprisonment of 32 months for the commission of that offense and that he received a significant increase in the base level for the commission of the indecent liberties offense.  Vera-Garcia thus concludes that a criminal history category of III over-represents the likelihood that he will commit future crimes.

The United States argues that the single point was properly assessed, because it is Vera-Garcia's burden to establish that this conviction is constitutionally infirm, because he has not presented evidence that the conviction is constitutionally infirm, and because he was not sentenced to a term of imprisonment for the misdemeanor conviction, and therefore did not have a right to counsel.  The United States further argues that the three points assessed for his indecent liberties conviction were properly assessed, because the Tenth Circuit has consistently held that a defendant's prior record may be used in determining both sentence enhancements and criminal history category. The United States concludes by stating that Vera-Garcia's criminal history category reflects the

severity of his criminal history past.

The guidelines state: "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." U.S.S.G. § 4A1.3(b)(1).

The Court believes that Vera-Garcia's criminal history category is properly assessed.  The Court will not disregard the point the PSR assessed for Vera-Garcia's conviction for driving while impaired.

> Once the existence of a conviction is established, the presumption of regularity attaches and we assume that the convicting court complied with the law in all respects, including the requirements for establishing a waiver of the right to counsel. The government is not required to offer any evidence of compliance; Defendant must prove noncompliance.

United States v. Duarte-Gutierrez, 129 F. App'x at 443.  "To overcome this presumption and bar the use of a prior conviction for sentence enhancement, the defendant must prove by a preponderance of the evidence that the conviction was constitutionally infirm."  United States v. Krejcarek, 453 F.3d at 1297 (citing United States v. Windle, 74 F.3d at 1001).  See United States v. Cruz-Alcala, 338 F.3d at 1197 ("Once the prosecution establishes the existence of a conviction, the defendant must prove by a preponderance of the evidence that the conviction was constitutionally infirm." (emphasis in the original)(internal quotation marks omitted)).  "[A] defendant may not simply point to a silent or ambiguous record, but must come forward with affirmative evidence establishing that the prior convictions were obtained in violation of the Constitution."  United States v. Cruz-Alcala, 338 F.3d at 1197.  Vera-Garcia has not proved by a preponderance of the evidence that his conviction was constitutionally infirm.  He has not directed the Court's attention to any evidence establishing that his conviction was obtained in violation of the Constitution.  Furthermore, Vera-

Garcia was not entitled to counsel in connection with this misdemeanor conviction, because no term of imprisonment was imposed.  See PSR ¶ 20 (stating that Vera-Garcia pled guilty, and was sentenced to 12 months of probation and ordered to pay court costs and fees).  The Court will therefore deny Vera-Garcia's request that it disregard this point.

The Court will also deny Vera-Garcia's request that it downwardly depart, because he already served a term of imprisonment for his conviction for indecent liberties, and because he received a significant increase to his base offense level because of the conviction.  The Tenth Circuit has recognized that it "has consistently held that a defendant's prior record may be used in determining both sentence enhancements and criminal history category."  United States v. Ayala-Romero, 239 F. App'x 457, 459 (10th Cir. 2007)(citing United States v. Alessandroni, 982 F.2d 419, 421 (10th Cir. 1992); United States v. Florentino, 922 F.2d 1443, 1446 (10th Cir. 1990). Accordingly, the Court finds that the three points Vera-Garcia received for his conviction for indecent liberties do not over-represent his criminal history.

The Court does not believe that a criminal history category of III over-represents Vera-Garcia's criminal history.  Vera-Garcia has two serious adult criminal convictions.  They are not ancient convictions.  Vera-Garcia did not receive any points for the timing of the conviction.  The Court does not see anything that indicates that a criminal history category of III over-represents Vera-Garcia's criminal history.  The Court will therefore deny his request for a downward departure on over-representation of his criminal history.

## III.   THE COURT WILL NOT DOWNWARDLY VARY.

The Court has reviewed the PSR's factual findings with care.  There not being any dispute about the findings, the Court will adopt those as its own.  The Court has also considered the sentencing guideline applications.  Having overruled Vera-Garcia's objection as to the 16-level

enhancement and having denied Vera-Garcia's request for a downward departure on over-representation, the Court adopts the sentencing applications in the PSR as its own.  The Court has also considered the factors set forth in 18 U.S.C. § 3553(a).  Vera-Garcia's offense level is 21 and his criminal history category is III.  The guideline imprisonment range is 46 to 57 months.  The Court notes Vera-Garcia unlawfully reentered the United States after having previously being deported to Mexico.  The Court has carefully considered the guidelines, but in arriving at its sentence it has taken into account not only the guidelines but other sentencing goals.  Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant.  After carefully considering counsel's arguments and Vera-Garcia's circumstances, the Court believes that the punishment that the guidelines set forth is appropriate for this sort of offense.  Vera-Garcia has a common-law wife and two children who reside in Silver City, New Mexico.  His wife suffers from bi-polar disorder.  Vera-Garcia reentered the United States out of a desire to take care of his wife and provide for his children.  The Court does not believe that a defendant's return to the United States because of the health or death of a family member, even if dire, alone is sufficient to justify a variance.  There are many defendants with sick family on one side of the border or the other that this reason evades justification of a variance; something more is required, and there is not much more to arguably justify a variance.  United States v. Ponce-Alvarez, No. CR 10-0819, 2010 WL 4053573, at * (Aug. 30, 2010)(Browning, J.)("The Court believes that . . . illegally entering the United States to visit a sick relative is not a sufficient basis alone for a variance . . . .").  When the Court carefully considered the circumstances in this case, it did not see much else.  If the Court were to downwardly vary every time someone had a family situation on the other side of the border, almost everyone would be entitled to a variance.  Vera-Garcia's criminal history category is not reassuring to the

-30-

Court.  The circumstances of his conviction for indecent liberties are troubling and the fact that he has another conviction is troubling as well.  There do not seem to be good grounds in this case to vary because of his family circumstances.  The Court has considered the kinds of sentences and ranges that the guidelines establish, and the Court believes that a sentence at the low end of the guideline range reflects, and is needed to reflect, the seriousness of the offense, which is predicated on a serious crime, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public.  The Court believes a 46-month sentence fully and effectively reflects each of the factors embodied in 18 U.S.C. § 3553(a).  And while the Court's task as a trial court is not to come up with a reasonable sentence, but to balance the 18 U.S.C. § 3553(a) factors correctly, see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2).")(citation omitted), the Court believes that this sentence is reasonable.  Moreover, this sentence is sufficient without being greater than necessary to comply with the purposes set forth in the Sentencing Reform Act.

IT IS ORDERED that the requests in the Defendant's Objection to the Presentence Report, Sentencing Memorandum and Motion for Sentence Varying From the Guideline Range, filed December 28, 2010 (Doc. 42) are denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Lynn Wei-Yu Wang
  Assistant United States Attorney
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Arthur B. Nieto
Nieto Law Office
Albuquerque, New Mexico

       *Attorney for the Defendant*